IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 05-06036-01-CR-SJ-NKL |
| HENRY CURTIS UNDERWOOD, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION
### TO ACCEPT DEFENDANT'S GUILTY PLEA

On February 21, 2006, I held a change-of-plea hearing after this case was referred to me by United States District Judge Nanette Laughrey. I find that Defendant's plea was voluntary and therefore recommend that it be accepted.

### *I. BACKGROUND*

On November 16, 2005, an one-count indictment was returned, charging Defendant with knowingly causing transmission of a program, information, code, or command and, as a result of such conduct, intentionally causing damage to a protected computer without authorization and in excess of his authorized access, causing a loss of at least $5,000 to one or more persons during a one-year period, in violation of Title 18, United States Code, §§ 1030(a)(5)(A)(i), (a)(5)(B)(i), and (c)(4)(A). A change-of-plea hearing was held on February 21, 2006. Defendant was present, represented by retained counsel Jacquelyn Rokusek. The government was represented by Assistant United States Attorney Curt Bohling. The proceedings were recorded and a transcript of the hearing was filed on February 23, 2006.

## II. AUTHORITY OF THE COURT

The authority of federal magistrate judges to conduct proceedings is created and defined by the Magistrates Act, 28 U.S.C. § 636. Besides certain enumerated duties, the Act provides that a "magistrate may be assigned such additional duties as are not inconsistent with the Constitution and the laws of the United States." 28 U.S.C. § 636(b)(3).

The Eighth Circuit, following the reasoning of several other circuits, has held that magistrate judges may preside over allocutions and pleas in felony cases, so long as certain procedural safeguards are met. United States v. Torres, 258 F.3d 791, 795-96 (8th Cir. 2001); see also United States v. Dees, 125 F.3d 261 (5th Cir. 1997), United States v. Williams, 23 F.3d 629 (2d Cir. 1994). The reasoning applied by the appellate courts relies upon previous opinions by the United States Supreme Court that conducting jury *voir dire* falls within a magistrate judge's "additional duties" when the defendant has consented. See Torres, 258 F.3d at 795 (citing Peretz v. United States, 501 U.S. 923 (1991); Gomez v. United States, 490 U.S. 858 (1989)).

In Peretz, the Supreme Court held that when a defendant consents to a magistrate judge's involvement in *voir dire*, he waives any objection based on his right to have an Article III judge hear his felony case. 501 U.S. at 936. Moreover, the availability of *de novo* review by a district judge preserves the structural guarantees of Article III. Torres, 258 F.3d at 795. Applying the Peretz holding and adopting the reasoning of Williams, the Eighth Circuit held that the acceptance of guilty pleas bears adequate relationship to duties already assigned by the Magistrates Act in that "[a]n allocution is an ordinary garden variety type of ministerial function that magistrate judges commonly perform on a regular basis." Id. (quoting Williams, 23 F.3d at 633). Plea allocutions are substantially similar to evidentiary proceedings explicitly assigned by the Act. Id. at 796 (citing

2

Dees, 125 F.3d at 265). Even if taking a guilty plea were considered to be of greater importance than those duties already assigned, the consent of the defendant saves the delegation. Id. "Consent is the key." Id. (quoting Williams, 23 F.3d at 633).

The Torres court also addressed the implications of such a delegation for Article III's case and controversy clause. Id. Because plea proceedings are submitted to the district court for approval, the court retains ultimate control over the proceedings and is not bound to accept a plea taken by a magistrate judge. Id. Moreover, the district court's *de novo* review of the plea proceedings contributes to the ministerial nature of the magistrate judge's role. Id.

Based on the above, I find that, with the consent of the defendant, the District Court may properly refer a felony case to a Magistrate Judge for conducting a change-of-plea hearing and issuing a report and recommendation on whether the plea should be accepted.

### *III. FINDINGS OF FACT*

1. The parties consented to the delegation of the change of plea to the magistrate judge (Tr. at 2-3).

2. On November 16, 2005, an indictment was returned charging Defendant Underwood with knowingly causing the transmission of a program, information, code or command, and as a result of such conduct, intentionally causing damage to a protected computer without authorization in excess of his authorized access, and causing a loss of at least $5,000 to one or more persons during the one-year period following January 29, 2005, all in violation of Title 18, United States Code, Sections 1030(a)(5)(A)(i), (a)(5)(B)(i), and (c)(4)(A) (Tr. at 5). The court read the charges against Defendant and Defendant indicated that he understood the nature of this charge (Tr. at 5).

3. The statutory penalty for the offense charged in Count One is not more than ten years

in prison, a fine of up to $250,000, a supervised release term of not more than 3 years, plus a $100 mandatory special assessment fee (Tr. at 5). Defendant was informed of the penalty range and indicated that he understood (Tr. at 5).

    4.    Defendant was advised of the following:

    a.    That he has a right to a trial by jury of at least 12 individuals and that their verdict must be unanimous (Tr. at 6);

    b.    That he has the right to assistance of counsel throughout the trial (Tr. at 6-7);

    c.    That Defendant is presumed innocent, and the government has the burden of coming forward to prove Defendant's guilt beyond a reasonable doubt (Tr. at 7);

    d.    That Defendant's attorney would have the opportunity to cross-examine the government's witnesses (Tr. at 7);

    e.    That Defendant has the right to testify but does not have to, and that the jury could not make an adverse inference from the fact that Defendant may not testify at trial (Tr. at 8);

    f.    That Defendant has the right to subpoena witnesses to testify on his behalf (Tr. at 8); and

    g.    That Defendant has the right to appeal any conviction to the Eighth Circuit Court of Appeals (Tr. at 8-9).

    5.    Defendant was informed and understood that by pleading guilty, he was giving up all of the rights described above (Tr. at 9).

6. Defendant was informed that during the change-of-plea proceeding, he would be placed under oath and questioned by counsel and the judge (Tr. at 9-10). Defendant was further informed that he must answer questions truthfully while under oath (Tr. at 10). Defendant stated that he understood (Tr. at 10).

7. Government counsel stated that the government's file was disclosed to defense counsel in its entirety (Tr. at 13-14). Government counsel stated that the government's evidence would be that the Northeast Nodaway R5 School District ("District") is located in northwest Missouri, and includes Ravenwood High School in Ravenwood, Missouri, and Parnell Elementary School (Tr. at 10). All of the events in this case occurred within the Western District of Missouri (Tr. at 10).

At the end of the 2004 school year, the District Superintendent decided that it was necessary to hire a technology coordinator (Tr. at 10). Henry Curtis Underwood applied for and received this position (Tr. at 10). Underwood had been convicted of bank robbery in 1995 in federal court in Texas and was sentenced at that time to 63 months imprisonment (Tr. at 10). Underwood did not reveal his criminal history in his job application which asked, "Have you been convicted of a felony within the last seven years"? (Tr. at 10-11).

In December 2004, a theft of about $200 occurred at the school in Parnell (Tr. at 11). Following that, someone using a master key gained access to the offices at Ravenwood and rifled through them (Tr. at 11). In the course of investigating these crimes, a Nodaway County deputy sheriff uncovered Underwood's bank robbery conviction (Tr. at 11). On January 27, 2005, the District placed Underwood on administrative leave (Tr. at 11). On January 28, 2005, during an online Instant Message discussion with the principal at Parnell Elementary, Underwood said that he

5

Case 5:05-cr-06036-DW   Document 16   Filed 02/24/06   Page 5 of 9

could not understand why the principal had accused him of taking the missing money (Tr. at 11).

On Saturday, January 29, 2005, while working in her office, the principal was abruptly logged off her school computer and could not log back on (Tr. at 11). An investigation determined that only two accounts on the system were still functioning, the "cunderwood" account and the administrator account (Tr. at 11). All other accounts on the District's network had been disabled and could not be accessed, although they still existed on the system (Tr. at 11). In addition, all computer work-stations at both schools had been disabled (Tr. at 11).

At the time Underwood was suspended, the District was unaware that he had provided himself with remote access to the District's computer network through a Virtual Private Network or VPN (Tr. at 11-12). Later analysis with the system revealed that Underwood had established a VPN link from his home using a laptop computer to the Ravenwood school (Tr. at 12). The firewall at Ravenwood was configured to allow remote access to user "cunderwood" from one Static Internet Protocol address, which is 64.72.51.64, which was Underwood's home Internet Protocol address (Tr. at 12).

In addition, the remote user would have had to have had a firewall software installed on their remote computer with that same user name and IP address (Tr. at 12). Once inside the Ravenwood system, the intruder would have had access to any Ravenwood or Parnell computer on the VPN (Tr. at 12). The intruder did not lock down the "cunderwood" account because that account was being used as the point of entry for the intrusion (Tr. at 12). The intruder had to know the firewall administrator's user name and password as well (Tr. at 12). In short, it would have been virtually impossible for the intrusion to have been accomplished by anyone other than Underwood (Tr. at 12).

The January 29, 2005, computer intrusion was highly disruptive of the District's operations

6

(Tr. at 12). Full access to the system was not restored until March of 2005 (Tr. at 12). The school district incurred over $7,000 in direct remediation costs in the form of payments to consultants to repair the network and reestablish account access (Tr. at 12).

After being terminated from his employment with the District, Underwood obtained new employment and moved to Bloomington, Illinois (Tr. at 12-13). On October 5, 2005, FBI agents in Bloomington interviewed Underwood at his place of employment (Tr. at 13). In an oral statement, Underwood said that he had disabled the accounts at the District on purpose because of being suspected in the thefts and being placed on administrative leave (Tr. at 13). Underwood also wrote out a handwritten statement to the same effect (Tr. at 13). The evidence would be that Underwood did not have authority, or exceeded his authorized authority, to lock down these accounts and computers and not allow the users to have access to them (Tr. at 13).

8. Defense counsel stated that she had reviewed the government's file and confirmed from her own independent investigation that it was wise for her client to plead guilty (Tr. at 14). Defense counsel believed that the government could produce sufficient evidence to provide a sufficient basis to submit the case to a jury (Tr. at 14-15).

9. Defendant was placed under oath (Tr. at 14) and admitted the following: Around January 27th through January 29th of 2005, Defendant was employed by the Northeast Nodaway R5 School District (Tr. at 15). While so employed, he had access to the District's computers (Tr. at 15). On January 29, 2005, Defendant knowingly caused the transmission of a program or information or code or command that caused damage toa protected computer (Tr. at 15). At that time, Defendant knew he did not have access to do so (Tr. at 15-16, 17). The District incurred expenses or damages of at least $5,000 as a result (Tr. at 17).

10. Defendant stated that he had reviewed the plea agreement with his attorney and understood the terms of the agreement (Tr. at 21, 26).

11. No one has made any threats or any other promises in order to get Defendant to plead guilty (Tr. at 21).

12. Defendant is satisfied with the representation he has received from Ms. Rokusek (Tr. at 21-22). There is nothing she has done that Defendant did not want her to do, and there is nothing he wanted her to do that she has not done (Tr. at 22).

13. Defendant is 33 years old and has completed two years of college (Tr. at 26). Defendant had no difficulty understanding the plea agreement (Tr. at 26). Defendant has no mental health concerns that would prevent him from entering an intelligent and voluntary plea of guilty to these charges (Tr. at 26). Defendant was not under the influence of drugs or anything else that would cloud his ability to intelligently waive his right to a jury trial (Tr. at 26-27).

14. Defendant tendered a plea of guilty to the crime charged in Count I of the indictment (Tr. at 27).

15. The parties waived the ten-day objection period to the Report and Recommendation (Tr. at 27).

### V. ELEMENTS OF THE CHARGED OFFENSE

The elements necessary to sustain a conviction for the violations of the Computer Fraud & Abuse Act, 18 U.S.C. § 1030(a)(5)(A)(i), (a)(5)(B)(i), and (c)(4)(A), as alleged in the indictment include: (1) knowingly and intentionally causing the transmission of a program, information, code or command; (2) the computer must be a "protected computer"; (3) the transmission occurred without authorization; and (4) the transmission caused damage of at least $5,000 to one or more

8

Case 5:05-cr-06036-DW   Document 16   Filed 02/24/06   Page 8 of 9

persons during any one-year period.  18 U.S.C. § 1030(a)(5)(A)(i), (a)(5)(B)(i); see also United States v. Nat'l Health Care Disc.,174 F. Supp. 2d 890, 898 (N.D. Iowa 2001).

### *V.  CONCLUSION*

Based on the above, I make the following conclusions:

1. The district court may lawfully refer this case to a magistrate judge for issuance of a report and recommendation on whether Defendant's guilty plea should be accepted.

2. Defendant has consented to having his plea taken by a magistrate judge.

3. Defendant knowingly and voluntarily pleaded guilty to conduct establishing every element of the crime charged in Count I of this indictment.

Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order accepting Defendant's guilty plea and adjudging Defendant guilty of the offense charged.

／s／ *Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 23, 2006